UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

WINTER-WOLFF INTERNATIONAL, INC.

                Plaintiff,

   -against-

ALCAN PACKAGING FOOD AND
TOBACCO INC.,

                Defendant.
-------------------------------------------------------X

**MEMORANDUM OF DECISION
AND ORDER**

Civil Action No. 05-2718
(DRH)(ETB)

**APPEARANCES:**

**For the Plaintiff:**
**Epstein & Weil**
225 Broadway, Suite 1203
New York, New York 10007
By:    Judith H. Weil, Esq.

**For the Defendant:**
**Linklaters LLP**
1345 Avenue of the Americas
New York, New York 10105
By:    Amanda J. Gallagher, Esq.
        Michael J. Osnato, Jr., Esq.
        Robert H. Bell, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff, Winter-Wolff International, Inc. ("plaintiff" or "Wolff") commenced this action asserting various causes of action arising out of the termination of a manufacturer's representative agreement between Wolff and defendant Alcan Packaging Food and Tobacco Inc. ("defendant" or "Alcan"). Presently before the Court is defendant's motion, made pursuant to Federal Rule of Civil Procedure 12(B)(6), to dismiss Counts 1 (breach of contract), 3 (breach of

implied obligations), 4 (tortious interference with contract), 5 (tortious interference with business relations) and 6 (New York Labor Law § 191-c) of the Amended Complaint, together with the demand for punitive damages. For the reasons set forth below, the motion is granted in part and denied in part.

## Factual Background

The following facts are taken from the Amended Complaint:

In January 2003, defendant[1] entered into a contract (the "contract") with plaintiff pursuant to which it engaged plaintiff to serve as its exclusive sales representative for flexible lamination food packaging products for retort applications (the "authorized product") with respect to certain customers (the "authorized customers") located in North America (the "authorized territory"). Plaintiff's compensation was based solely on commissions, which were due on all orders and sales contracts originating in the authorized territory of all authorized products sold and delivered to the authorized customers regardless of whether or not plaintiff initiated the sale.

Under the contract, plaintiff was required to develop and maintain a substantial volume of sales for defendant and to use its best efforts to assist in defendant's development of the retort market in the United States, including getting customers of defendant's European affiliates to switch from imported product and providing technical assistance so that the quality of defendant's product met customer requirements.

As there would be considerable lag time between Wolff's large initial investment of time, effort, and money in developing customers and its receipt of commissions from the new business generated by that investment, the parties agreed to contractual provision protecting Wolff against

---

[1] Prior to June 2003 defendant was doing business as Lawson Mardon USA Inc.

premature termination. The initial contract term was for three years from January 1, 2003 to December 31, 2005 with automatic renewals thereafter. Prior to the expiration of the initial term, defendant could only cancel the contract for cause as specified therein. Thereafter, either party could cancel the contract upon twelve months written notice.

The contract contains the following provision entitled "controlling law." "The laws of the State of Illinois shall apply and bind the parties in all questions arising hereunder, regardless of the jurisdiction in which any action or proceeding may be initiated or maintained and without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the State of Illinois."

In the summer of 2003, Alcan's corporate parent merged with a former competitor, resulting in a greatly increased capacity to supply authorized product from the manufacturing facilities acquired in the merger. It is alleged that Alcan sold millions of dollars of authorized product manufactured in the acquired plants to authorized customers within the authorized territory but failed to pay commissions to plaintiff.

Beginning in the Spring of 2004, defendant stopped responding to requests for price quotes from Wolff and informed authorized customers that Wolff was no longer authorized to serve as defendant's sales representative. On July 19, 2004, prior to the expiration of the initial term, defendant sent a letter to Wolff terminating the contract without cause effective July 19, 2005 and advising Wolff that it would cease paying any commissions to Wolff on that date. The letter also purported to prohibit Wolff from contacting or soliciting any authorized customers and placed Wolff on notice that defendant did not intend to provide price quotes or accept orders for authorized products from authorized customers in the authorized territory.

Beginning in the Fall of 2004, defendant began to improperly pressure its European affiliates, with whom plaintiff had existing agency or representative contracts that predated the contract with defendant, to terminate their contracts with plaintiff and replace plaintiff with its own employees. By letters dated December 21 and December 22, 2004, the European affiliates terminated their contracts with plaintiff effective December 31, 2005. The amended complaint alleges that the defendant forced the European affiliates to terminate their contracts through improper pressure and induced the termination by agreeing to inter-company transactions.

## *Discussion*

### *I. Standard for Motion to Dismiss*

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson*, 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir. 2006). Nonetheless, "a plaintiff's allegations, accepted as true, must be sufficient to establish liability." *Amron v. Morgan Stanley Investment Advisors Inc.,* 464 F.3d 338, 344 (2d Cir. 2006).

In construing a complaint on a Rule 12(b)(6) motion, the Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King*, 189 F.3d at 287; *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329

(2d Cir. 1997). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

## II. Count 1 of the Amended Complaint

In Count 1 of the amended complaint Wolff alleges that Alcan breached the contract by failing to pay Wolff commissions on authorized products manufactured in the acquired plants and sold by defendant to authorized customers in the authorized territory. Alcan argues that this breach of contract claim must fail as a matter of law for two reasons. First, "public documents" consisting of SEC filings establish that it was not defendant who acquired the additional plants but rather an "indirect" corporate parent who is not a party to the contract and not obligated to pay commissions to Wolff. Second, it is argued that the agreement does not require the payment of commissions on sales by affiliates. Defendant's arguments are without merit.

Under Illinois law,[2] the essential elements of a cause of action for breach of contract are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Gonzales v. American Exp. Credit Corp.,* 315 Ill. App. 3d 199, 733 N.E.2d 345, 351 (Ill. App. 1 Dist. 2000) (citing *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 721 N.E.2d 605 (Ill. App. 1 Dist.1999). Plaintiff has satisfactorily pled each of these elements.

---

[2] The parties agree that, pursuant to the contractual choice of law provision, Illinois law governs the breach of contract claims.

Count 1 alleges that defendant breached the contract when "defendant . . . sold millions of dollars of Authorized Product manufactured in the [acquired] Plants to Winter-Wolff's Authorized Customers in the Authorized Territory" without paying Wolff commissions therefor. AC ¶ 19, 21. Contrary to defendant's argument, Count 1 does not allege a breach due to "sales by affiliates." Nor for purposes of a motion to dismiss is it relevant who owns the "acquired plants" given that the allegation is that the defendant sold authorized product to authorized customers in the authorized territory. It may be that the sales were made by affiliates and not, as plaintiff has alleged, by the defendant. That determination and the effect thereof must be left to another day as its resolution is inappropriate on a motion to dismiss.

The motion to dismiss Count 1 is denied.

## III. Count 3

Count 3 of the amended complaint alleges that (1) Alcan delayed or failed to respond to Wolff's request for price quotes, (2) failed and refused to provide authorized product to authorized customers and (3) informed authorized customers that Wolff was no longer authorized to act as a sales representative for Alcan and that these "actions and failures to act constituted a breach of defendant's implied and express contractual obligations to plaintiff, thwarted plaintiff's performance under the contract and resulted in damage to the plaintiff . . . ." Defendant argues that this Count must be dismissed because "the implied duty of good faith does not give rise to an independent cause of action under Illinois Law."

Defendant's argument must be rejected. First, as set forth above, Count 3 alleges breached of implied and **express** contractual obligations. Second, plaintiff is not alleging "a lack of good faith" as a separate obligation on which a cause of action is based. *See Beraha v. Baxter*

6

*Health Care Corp.,* 956 F.2d 1436 (7th Cir. 1992). Rather, fairly read, the Count alleges, inter alia, that given the terms of the contract, Alcan had an obligation to promptly respond to Wolff's request for price for price quotes so that Wolff could sell authorized product to authorized customers and that the failure to respond either at all or in a timely fashion breached this obligation. For example, paragraph 2(g)(i) provides that "[o]nly written prices issued by authorized LM personnel shall be presented or acknowledged to the customer." The contract does not specify that defendant's personnel must respond to requests for price quotes but surely such an obligation would be implied given that only written prices by defendant's personnel can be presented to customers. *Cf. id.* (holding that although implied covenant of good faith does not create an enforceable duty, it did require party to exercise discretion afforded to it by the agreement in a manner consistent with the reasonable expectations of the parties).

The motion to dismiss Count 3 is denied.

## IV.  Counts 4 and 5

### A.  The Governing Law

Counts 4 and 5 are grounded in tort. Count 4 alleges tortious interference with contracts and Count 5 alleges tortious interference with business relations. As a preliminary matter the Court must determine what law applies. Plaintiff argues that (1) the contractual provision is broad enough to cover tort claims rendering the law of Illinois as governing and (2) in any event, under a New York conflicts of law analysis, Illinois law would apply. Defendant counters that (1) the choice of law provision is limited to disputes arising under the contract and does not reach tort claims and (2) under the New York "greater interest" test, New York law governs.

In this case the contractual choice of law provision is as follows:

> The laws of the State of Illinois shall apply and bind the parties in all questions arising hereunder, regardless of the jurisdiction in which any action or proceeding may be initiated or maintained and without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other that the State of Illinois.

Under New York law, a choice-of-law provision indicating that a contract will be governed by a certain body of law does not dispositively determine the law which will govern a tort claim arising incident to a contract. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996); *cf. Finance One Public Co. Ltd. v. Lehman Bros. Spec. Financing Co., Inc.,* 414 F.3d 325, 334 (2d Cir. 2005) (New York courts decide scope of contractual choice of law clauses under New York law, not law selected by clause). Generally, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract . . . ." *Id.* at 335. A choice of law provision will apply to tort claims incident to a contract if the express language of the provision is "sufficiently broad" as to "encompass the entire relationship between the contracting parties." *Krock*, 97 F.3d at 645. In *Finance One,* the Second Circuit surveyed New York cases and found that there were *no* reported New York state cases where a contractual choice-of-law clause was drafted broadly enough to reach tort claims. 414 F.3d at 335.

Wolff argues that the choice of law provision is quite broad, emphasizing that it governs "**all** questions arising hereunder." According to Wolff, "The subject matter of the Contract specifically addresses the parties' relations with defendant's Swiss and German affiliates. . . . The Contract contains multiple references to defendant's obligations with respect to those issues, all of which serve to make the defendant's tortious conduct a question "arising under" the Contract

8

that should be governed by Illinois law in accordance with the Contract's terms."

Alcan argues that the choice of law provisions is restrictive, emphasizing that it requires the application of Illinois law only to claim "arising **hereunder."** According to Alcan, the choice of law provision "only reaches questions concerning the interpretation of, and the parties' conduct under, the Agreement. . . . Plaintiff's tort claims have nothing to do with the Agreements; rather they rest on the allegation that defendant tortiously interfered with the Singen and Rorshach contracts. Plaintiff's argument that Illinois law should apply because the tort claims involve defendant's affiliates and the Agreement contains multiple references to defendant's affiliates is at odds with the narrow language of the Agreement and New York law."

The contractual language "arising hereunder' is not sufficiently broad to encompass tort claims. *See generally Finance One,* 414 F.3d at 333-335 (holding that choice of law provision in contract was not broad enough to include extra-contractual set-off rights given "New York courts' reluctance to read choice-of-law clauses broadly" together with fact that parties could have but did not include a provision creating set-off rights).  "Hereunder" references only the contract.  The tort claims deal not with the contractual relationship between plaintiff and defendant but the contractual relationship between plaintiff and defendant's affiliates.  The contract does not provide for the choice of law for any and all disputes with respect to the parties dealings and therefore does not apply to the tort claims. *See Hughes v. LaSalle Bank,* 419 F. Supp. 2d 605, 616 (S.D.N.Y. 2006)

As the tort claim is not covered by the choice of law provision in the contract, this Court must apply New York's interest analysis which gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has

9

the greatest concern with the specific issue raised in the litigation." *Cooney v. Osgood Mach. Inc.,* 81 N.Y.2d 66 (1993). "The contacts of the parties and occurrences with each jurisdiction are thus factors to be considered in applying interest analysis, together with the policies underlying each jurisdiction's rules, the strength of the governmental interests embodied in these policies, and the extent to which these interests are implicated by the contacts." *Finance One*, 414 F.3d at 337.

"Where, as here, the parties are domiciled in different states and the issue is the standard governing the defendant's conduct, 'the place or location of the tort is determinative.'" *Discover Group Inv. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 85 (E.D.N.Y. 2004) (quoting *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 239 (S.D.N.Y. 2002)); *K.T. v. Dash,* 37 A.D.3d 107 (1st Dept. 2006) (if purpose of law is to regulate conduct, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders"). When the conduct occurs in one jurisdiction and injuries are suffered in another, the tort will be deemed to have occurred in the place where the last event necessary to render the tortfeasor liable occurred. *Discover Group,* 333 F. Supp. 2d at 85. The last event necessary for the tort of tortious interference is that the plaintiff suffer damages. *Id.* In this case Plaintiff resides and does business in New York and New York is where it suffered injury. New York has the greater interest in regulating this conduct and therefore the Court will apply New York law.

**B. Tortious Interference with Contracts.**

Under New York law, "[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract,

defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Company v. Smith Barney Inc.,* 88 N.Y.2d 413, 424 (1996).

Defendant argues that this claim must fail because no breach has been alleged and because plaintiff has failed to allege the requisite wrongful means. Plaintiff responds that "[t]he complaint pleads defendant's utter disregard of its contractual obligations during the termination notice. It alleges that after terminating its own contract, the defendant exerted sufficient pressure on the Affiliates to cause them to terminate their contracts with plaintiff despite their satisfaction with plaintiff's performance. It is reasonable to infer that the defendant's pressure also succeeded in causing the Affiliates to disregard their continuing obligations to deal with plaintiff fairly and in good faith over the final contract year, although proof thereof can only be obtained through discovery."

Defendant is correct that the claim for tortious interference with contracts must be dismissed for failure to allege any breach of the contracts with the affiliates. If Plaintiff has a basis for pleading that the affiliates breached their contracts during the final contract year, then plaintiff may seek leave to replead. As the amended complaint stands now there is no allegation that the contracts with the affiliates were breached. Rather the amended complaint avers that the affiliates terminated the contracts in accordance with their terms for termination without cause and thus fails to plead a breach, one of the necessary elements for a tortious interference with contract claim.[3]

---

[3] Defendant is incorrect that plaintiff must allege procurement of the breach by wrongful means, confusing the elements of the tort of tortious interference with contracts with the elements of the tort of tortious interference with business relations. *See Carvel Corp. v.*

The motion to dismiss Count 4 is granted.

### C. Tortious Interference with Business Relations[4]

Under New York law a plaintiff seeking to recover for tortious interference with business relations must allege and prove "(1) there is a business relationship between plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair or improper means; and (4) the relationship is injured. *Goldhirsch Group, Inc., v. Alpert,* 107 F.3d 105, 108-09 (2d Cir. 1997).

Defendant argues plaintiff's claim for intentional interference with business relations must be dismissed for failure to sufficiently plead the third element.

The New York Court of Appeals most recent pronouncement in the area of tortious interference with business relations is *Carval Corp. v. Noonan,* 3 N.Y.3d 182 (2004). Therein, the New York Court of Appeals reiterated that greater protection is accorded an interest in an existing contract than to the less substantive, more speculative interest in a prospective business relationship. Therefore, proof of more culpable conduct on the part of the defendant is required for the tort of interference with business relations than for the tort of interference with contract. *Id.* at 189-190 (*citing NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,* 87 N.Y.2d 614

---

*Noonan,* 3 N.Y.2d 182, 189 (2004) ("where there is an existing enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference even if defendant was engaged in lawful behavior. Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of defendant.").

[4] This tort is variously referred to as tortious interference with business advantage, business relations, economic relations, and prospective economic advantage. *See PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir. 1987).

(1996). Thus, "as a general rule, the defendant's conduct must amount to a crime or an independent tort" because "[c]onduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other non-binding economic relations." *Id.* at 190. The requirement that the conduct amount to a crime or independent tort is, however, a "general rule." The *Carvel* Court also held that "wrongful means" may also include "some degree of economic pressure" and that economic pressure must be directed at the party with which the plaintiff has or seeks to have a relationship and must be "extreme and unfair" to be wrongful. *Id.* at 192-193.

Here, the allegations in the amended complaint are that defendant "purposely and wrongfully induced" the European affiliates "to terminate their contract with plaintiff by exerting improper pressure and agreeing to certain intercompany transactions." Although it is not clear exactly what constitutes extreme and unfair economic pressure, *see Masefield AG v. Colonial Oil Indus.,* 2006 WL 346178 at *9 (S.D.N.Y. 2006), it is clear specific factual – not conclusory – allegations are necessary to survive a motion to dismiss. *See id.;*; *accord Behrend v. Klein,* 2006 WL 2729257 at * 11 (E.D.N.Y. 2006)*; Croton Watch Co., Inc. v. Nat'l Jeweler Magazine, Inc.,* 2006 WL 2254818 at *9 (S.D.N.Y. 2006); *Jacobs v. Continuum Health Partners, Inc.* 7 A.D.3d 312, 313 (1st Dept. 2004) (dismissing tortious interference with business relations claim where plaintiff failed to allege "specific facts that could support an inference that defendants were motivated solely by a desire to harm [or] . . . specific facts that, if proven, would show that the [actions taken were] . . . otherwise independently wrongful."); *Lockheed Martin Corp. v. Aatlas Commerce Inc.,* 283 A.D.2d 801 (3d Dept. 2001). See generally *Amron v. Morgan Stanley Investment Advisors Inc.,* 464 F.3d 338, 344 (2d Cir. 2006)

13

(complaint must allege those facts necessary to support a finding of liability). Here, there is no factual description to support the claim of "improper pressure." Accordingly, the motion to dismiss Count 5 is granted.

## V. The Demand for Punitive Damages

Given the dismissal of plaintiff's tort claims, the demand for punitive damages must also be dismissed. *See Rivals v. AmeriMed USA, Inc.,* 34 A.D.3d 250, 251 (1st Dept. 2006).

## VI. Labor Law § 191-c

Section 191-c of the New York Labor Law specifies when earned sales commissions are to be paid when a contract between a principal and sales representative is terminated and provides for double damages, attorney's fees and costs to a prevailing sales representative when commissions are not timely paid. N.Y. Labor Law § 191-c. In the complaint, Plaintiff seeks double damages under the New York Labor Law and treble damages under the Illinois Sales Representative Act.

Defendant seeks dismissal of the New York Labor Law claim arguing that, pursuant to the choice of law provision in the contract, Illinois law governs all causes of action sounding in contract, including plaintiff's claim for supplemental damages for alleged labor law violations. In response, Wolff first points out the apparent inconsistency of defendant's labor law argument with its argument on plaintiff's tort claims that the scope of the contractual choice of law provision is narrow and covers only contractual interpretations issues (and ignores the apparent inconsistency between its own arguments that the choice of law provision is broad enough to covers tort claims but not broad enough to cover the labor law claim). Wolff then argues that the parties' choice of foreign law should be rejected because its application would violate

14

fundamental policies of New York.

The choice of law provision in this contract is not limited to disputes concerning the interpretation of the agreement. Although not broad enough to cover torts claim, it is broad enough to cover plaintiff's claim for supplemental damages for breach of the contractual obligation to pay commissions. The choice of law provision requires application of Illinois law to "all questions arising hereunder, regardless of the jurisdiction in which any action or proceeding may be initiated or maintained and without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other that the State of Illinois." The language is broad enough to cover supplemental damages, imposed by statute, for the failure to pay the commissions required under the contract. *Cf. Frishberg v. Espirit De Corp.,* 778 F. Supp. 793, 803 (S.D.N.Y. 1991) (holding that claims under New York Labor Law § 191-c(1) were entirely dependent on the contract claims), *aff'd,* 969 F.2d 1042 (2d Cir. 1992)..

Plaintiff's reliance on *DCMR v. Trident Precision Mfg.*, 317 F. Supp. 2d 220 (W.D.N.Y. 2004), *aff'd,* 110 Fed. Appx. 205 (2d Cir. 2004) is misplaced. In *DCMR,* the plaintiff alleged, inter alia, that defendant had breached the parties' contract and that the defendant had wrongfully and in bad faith terminated a contract in violation of the Sales Representative Act of Texas. Defendant moved to dismiss the breach of contract claim because, by contract, the parties had the right to terminate the agreement upon thirty days notice for any reason or no reason and therefore the choice to exercise that right cannot amount to a breach. The court agreed and dismissed the breach of contract claim. Defendant also moved to dismiss the claim under Texas law arguing that the contract and any litigation arising from the contract was governed by New York law

15

pursuant to the contractual choice of law provision. The court once again agreed. First, the court found that the contractual choice of law provision provided that New York law would govern the Contract and any litigation arising from it. Then the *DCMR* court found there was a reasonable basis for choosing New York law as defendant was located in New York and no fundamental policy would be offended by application of New York law. Accordingly, the court concluded that "New York law and not Texas law govern[ed] the dispute." *Id.* at 225. Plaintiff's argument that "[o]nce the *[DCMR]* court determined that the termination was not wrongful under New York law, it dismissed the plaintiff's claim for violation of the Texas Act" and "[c]onversely, if termination had been wrongful under New York law, the separate cause of action for violation of the Texas Act would not have been dismissed" seriously misreads the holding of the *DCMR* Court.

Plaintiff also urges this Court to reject the parties' choice of foreign law because the application would violate fundamental policies of New York law.

Here, there is a reasonable basis for the choice of Illinois law as defendant maintains its principal place of business there. Nor would application of the Illinois supplemental damages statute violate fundamental policies of New York even if Illinois law has more stringent requirements for the imposition of supplemental damages. Indeed, a similar argument was reject in *Boss v. American Express Financial Advisors, Inc.,* 15 A.D.3d 306 (1st Dept. 2005), *aff'd*, 6 N.Y.3d 242 (2006). In *Boss*, the Appellate Division rejected the argument that because New York's employment law affords greater protection to its workers than Minnesota's, enforcement of the choice of law provision would violate public policy:

> "[A] mere difference between the foreign rule and our own does

> not warrant a refusal to apply the foreign law . . . . Here, Plaintiffs
> do not complain that the deductions were not valid business
> expenses but rather that they exceeded the amount permissible
> under New York law. This is not the type of transaction that
> violates fundamental principles of justice (see Intercontinental
> Hotels Corp. v. Golden, 15 N.Y.2d 9 . . . (foreign based rights
> should be enforced unless their enforcement would result in
> approval of transaction that is inherently vicious, wicked, or
> immoral, and shocking to prevailing moral senses). Accordingly,
> the motion court properly upheld the choice of law provision.

15 A.D.3d at 308. It does not seem to this Court that applying Illinois law regarding supplemental damages would violate the public policy of New York. The motion to dismiss Count 6 of the amended complaint is granted.

### *Conclusion*

For the reasons set forth herein, the motion to dismiss is DENIED as to Counts 1 and 3 of the amended complaint and GRANTED as to Counts 4, 5, 6 and the request for punitive damages.

**SO ORDERED**

Dated: Central Islip, New York
    June 5, 2007

/s/
Denis R. Hurley
Senior District Judge